Please call the next case. 112-107 American Airlines v. Anita Ingle Counsel, you may proceed. Good morning, Your Honors. Counsel, May it please the Court. Karen Harsgaard on behalf of American Airlines. We are here today to ask this Honorable Court to overturn the Commission decision binding causal connection in this matter as it is against the manifest weight of the evidence. And in the event that I am not persuasive to you on this element, I am also here to request that the medical bills awarded by the Commission be delineated, proper credit be provided pursuant to HA and credit be provided for the medical bills that were actually paid by the employer in this matter, which did not occur in the Commission decision. In order to address causal connection, one first must look to see what the decision of causation is based upon. In this case, as you are all aware, there was quite a bit of medical evidence, both in the form of medical records and testimony due to evidence depositions. And in this case, the arbitrator and the Commission both relied upon Dr. Dick, Dr. Lee, and Dr. Pinopio, the claimant's treating physicians in this matter, to find causal connection. What the employer is asking that you apply is the case of William Gross versus the Industrial Commission, which indicates that an expert's opinion is only as reliable as the facts upon which that opinion is based. And if you look at the individual experts in this case upon whom the Commission relied, and taking them one at a time, Dr. Dick was the claimant's longtime neurologist. Dr. Dick treated the claimant probably for about 15 years prior to the March 1, 2007 accident. He was well-versed at the evidence deposition in the diagnosis of complex regional pain syndrome. He was well-versed in the claimant's personal medical history up until that point. Unfortunately, Dr. Dick never examined her after the March 1, 2007 accident for complex regional pain syndrome. He saw her about seven months after that in the emergency room for what she described as numbness and tingling in her head. And then he saw her again when she was seen almost a year later for cellulitis in the hospital. He admitted he never evaluated her for complex regional pain syndrome in this case. But she wasn't complaining of it at that point. I'm sorry? She wasn't complaining of it at that point. She was complaining of other injuries that may have been in the same general vicinity, but that was not her complaint. That is correct. So why would he go beyond that to see how that might be impacted? She knew what it was. He knew what it was. And she wasn't complaining of that. Correct. The visits that he had with her, those two occasions, neither of those were complaints to him about complex regional pain syndrome, despite the fact that he had been her longtime physician for that situation. But he did, at the evidence deposition, provide an opinion relative to causal connection to opposing counsel in this matter, despite the fact that he never evaluated her for complex regional pain syndrome, and despite the fact that the history which was provided to him by counsel is a variant of that which testified to at the time of hearing. The claimant is a flight attendant, as you're aware. She testified at the time of hearing that she was pushing a cart to collect garbage and that a passenger got up and got in her way. She slipped with both of her legs going under the cart. She was hanging on to the cart. What she told the majority of the physicians and what's in the initial medical records is that the cart ran over her foot. Those two mechanisms of injury are not compatible with one another. I mean, if you visualize a cart running over your foot, a 175-pound cart, I'm sure you've all been on an airline, to have the cart run over your foot and then have both legs go under the cart is mechanically not feasible. Her statements are inconsistent with one another. Now, whether you believe that the cart ran over her foot or what she later testified to and told Dr. Blonsky that they went underneath is a matter for the commission to decide, and I believe that the commission decided that they believed what she testified to on the date of the hearing. That's what is in every decision thereafter. So Dr. Dick's opinion, though, with respect to causal connection is based upon, firstly, the fact that the cart ran over her foot, and secondly, that she had complex regional pain syndrome. And I'm going to bring this up in conjunction with Dr. Lee as well, because Dr. Lee did not review any of the records from the time of March 1, 2007, until the time he saw her in September of 2007. So a six-month gap of records that neither Dr. Dick nor Dr. Lee saw, and as Dr. Lee and Dr. Blonsky, an employer's expert, stated, you would note symptoms of complex regional pain syndrome fairly quickly after the original accident. In the petitioner, in the claimant's case, typically in her prior medical records, they were within about a week's time that she had complex regional pain syndrome after some kind of an incident she had described, a bee sting, a dog attack, and various other incidents, which she immediately had onset of symptoms. From March 1, 2007 through August 22, 2007, she saw her family physician primarily, Dr. Pinopio, and we took Dr. Pinopio's deposition. She testified that all of the initial visits were focused on her right knee, not her right foot. And the findings were all consistent with a right knee strain. Which would be consistent with both legs going under the cart. Absolutely. Absolutely. And just to be clear, employer is not here to argue CISPRO, as counsel had indicated. We're not arguing that there was no accident here. I'm arguing, essentially, that she had no manifestation of complex regional pain syndrome as a result of this accident. It's a strict causal connection argument. So she sees a number of physicians other than Dr. Pinopio at Broman Hospital, the orthopedic surgeon to whom Dr. Pinopio refers her to. Everyone is focused only on the knee. Those are her complaints, other than an incident of pneumonia at Broman Hospital, which occurs during this timeframe. And that goes through all the way through August 22, 2007, at which point Dr. Pinopio has now diagnosed her with shingles. And let me make a mention of that shingles issue in conjunction with Dr. Dick's telephone call on May 21, 2007. When she calls Dr. Dick, she speaks to his nurse. But she says, both feet are itching and scaly, which is why she calls for a medication change. So I'm just going to put out there that obviously she had some other processes going on here at the same time as her knee strain, for which she treated for this six-month period of time. But nowhere in these initial treatment records, either at Broman Health or in Dr. Pinopio's records, is there anything consistent with a diagnosis of complex regional pain syndrome other than the swelling in the knee, which is consistent with a knee strain. And she herself, when she goes to Broman Hospital on March 12, 2007, says she was doing fine for the past week. She now complains of right lower extremity pain. But she says it's different than her complex regional pain syndrome. Now, I'm not going to say that the claimant herself should be held accountable for what her diagnosis is, but she certainly had this condition since 1994 and is familiar with what type of symptoms typically are the onset of that problem. So for those reasons, I would say that Dr. Dick was unfortunately deprived of having any of that history. And so his opinion that there's a causal connection opinion without performing a clinical exam to determine she in fact had complex regional pain syndrome, without reviewing any of the records for six months to determine, in fact, nobody had actually found any clinical findings of complex regional pain syndrome during that time, is simply not reliable. With respect to Dr. Lee, he not only did not review that time frame, the only information he had about her prior complex regional pain syndrome was the fact that counsel advised him she had a fracture in 1994, which required plate and screws to fixate, and then she developed complex regional pain syndrome. And so his understanding of her condition was it had completely resolved. Clearly, if you look at the records, it had not completely resolved. She has onsets all the way through November of 2006 documented in medical records here. Flare-ups on occasion due to specific incidents and flare-ups, according to both her and Dr. Dick, as a result of unknown causes. So I would pose to you that both Dr. Dick and Dr. Lee's opinions should be given no weight, because neither of them are based upon any of the facts necessary to make an opinion in this case. Which brings me to Dr. Pinopio. Dr. Pinopio was a very nice woman, and I think she really cares about her patient. And I think she was really trying to help her. But that being said, I think that the credibility of Dr. Pinopio is at issue. During the course of the evidence deposition, she tried to testify that there were earlier symptoms of complex regional pain syndrome than actually existed in her clinical records. And on cross-examination, she recanted that testimony. When we issued a subpoena for her records, we didn't get a complete set of records. She blamed that on her clerical staff. But these are issues, I think, with respect to her opinion. And she did indicate that she had some understanding of complex regional pain syndrome. She's an internist, and I'm not saying that she couldn't possibly understand it. But it's not documented anywhere in her records that there is anything consistent with complex regional pain syndrome for which she is treating this individual during the first six months of care. And after that, she abandons all that treatment to Dr. Lee for further medical management. So it would be my position that the only credible physician in whom you could put any weight in this particular case is Dr. Blonsky, who is the employer's examining physician. And the reason being, he examined her on two separate occasions. He reviewed every piece of paper that I could get my hands on, which was pretty large amounts of documentation. And he took histories from her on both of those occasions. And I think he had the experience. He's a board-certified neurologist as well as a pain clinician. And I think he had all of the evidence to render the opinions that he had rendered in this case. And what he stated was essentially that she suffered a knee strain, which eventually resolved, per her own statement to him, had resolved. And that unfortunately, because she has a condition of complex regional pain syndrome, which is chronic, and this is a chronic condition even per Dr. Dick, her long-term neurologist, that it either flared up as a result of one of these other systemic problems, the shingles that she developed, the pneumonia that she developed, or alternatively, it just flared up on its own because it has done that in the past. And so therefore, we are asking that this court find that there is no causal connection between the diagnosis of complex regional pain syndrome and the accident of March 1, 2007. And then just briefly, I want to touch on the medical bills. As you can tell from the medical bills, a number of them were paid by Medicare. And I think it's very important for both attorneys that if, in fact, you continue to find causal connection in this case, that the medical bills themselves be delineated. And the reason being, if Medicare decides that something should be paid according to them, we have no decision from the commission at this point indicating which dates of service and what amounts are actually due. So in the very least, I would ask that you remand it to the commission for them to specify those bills and to provide us proper credit for that which was paid. Thank you. Thank you, counsel. May it please the court, counsel. My name is Sean Oswald. I'm here representing Anita Engel, the workers' compensation petitioner. Obviously, as my brief makes clear, it is our position that this is a simply factual issue. This is one which the commission is entitled to make decisions about the credibility of the witnesses and to weigh the various facts and draw those determinations as laid out in Hosni. The counsel has pointed out a number of reasons why each of the treating doctor's opinions should not be given weight. I'll address each of those. With regard to Dr. Pinopio, the family doctor, Dr. Pinopio testified to an independent recollection of Anita Engel. She didn't try to testify to that. That's what she testified to. She was clear that she knew. I understand that counsel doesn't like the fact that she had a recollection that was over and above what was contained in her medical records, but the reality is that's what she testified to and there's no reason to doubt that she did. Sitting there, her testimony bore that out. She clearly knew who Anita Engel was. Further, Dr. Pinopio's testimony was that there were some indications very early on of the flare-up of the RSD. With regard to Dr. Dick, or Dr. Dick, excuse me, Dr. Dick gave the opinion, based upon years of treating Anita, based upon the facts that were presented to him, that this workplace accident did cause an aggravation of her CRPS. He deferred his treatment, but he didn't defer his opinion. And he based his opinion on the information that was provided to him, and he testified that he held that opinion to a reasonable degree of medical and surgical certainty. Did he testify as to priority of treatment? Should he treat the RSD or should he treat the injury? Did he testify to that? No. He treated what the testimony, or excuse me, he testified that the RSD had a certain course of treatment, but that there were also other conditions that he was treating her for. And he delineated those. For example, the foot drop, he testified he did not feel was related and there was a different course of treatment. The fact that she has multiple conditions does not in any way preclude the causal relationship between the work accident and the flare-up of the RSD. Dr. Dick, in rendering that testimony and that opinion, clearly was of the opinion that he had sufficient evidence and information before him to reach that opinion. And I understand the position that Respondent's Counsel is taking, but again, the doctor believed he had sufficient information to make that diagnosis and to make that opinion. And I think that he's entitled to be weighed on that basis, and the commission weighed him on that basis and found him to be credible. With regard to Dr. G. Lee's opinion, I don't believe that Dr. G. Lee's testimony was that he believed her condition of RSD had completely gone away. He testified that her symptoms were in remission. And regularly her symptoms did go in remission. There's no doubt, the petitioner testified, it's uncontested, that she had flare-ups of RSD. What's different, though, about all the prior flare-ups from these various years, she'd get the bee sting or the dog bite or whatnot, and it would cause her to miss a week of work, and the testimony from her doctors and from herself was she struggled to get back to work as quickly as she could. At the time of trial on this case, she'd been out for 30 months with this flare-up. This was completely different. It was qualitatively different from any of the previous flare-ups. Further, Dr. G. Lee's opinion is accurate in that she missed five years of work at the time that she had the original injury. That injury, that extent of disability had gone away. That was resolved. And she was working consistently for years with only intermittent flare-ups that were of temporary nature. I would point to the Schaefer case, which indicates that when the symptoms are under control, and they are under control because she is working on a regular basis, yes, she has periodic flare-ups, but they don't preclude her from work for any significant period of time. And then the accident happens, and that takes her out. It forces her symptoms out. That in and of itself is sufficient evidence to demonstrate the causal connection, and that's why I cited that particular case. Is there any contest to the January injury or the earlier injury? Well, I don't believe there's any contest to the accident of that injury, but as we've argued, there was no significant flare-up related to that. The TTD that was awarded was a little over a week. Perhaps that should be awarded, perhaps not. To the petitioner, that's a relatively minor issue. That was a temporary aggravation at best. But she was back to work within about a week. Correct. There was some discussion about the mechanism. I'm sorry, I don't have a hard time visualizing her feet, which are at the end of her legs, being run over at the same time that her legs are brought underneath the cart. In fact, she testified that they went under the middle there, and so they were dragged under. If you were talking about her standing up and the cart rolling across her feet, that's very different, but I don't think that's what's actually being described at any point in time. And so I really think that the commission heard that, reviewed the medical records, and placed the necessary weight and wrote their opinion in that way. As far as the onset of symptoms, she testified, and the commission found her to be credible, that she stopped working right after this happened. She went and she followed the prescribed course of treatment that Dr. Dick had given her for flare-ups of her RSD, that her fellow flight attendants took over for her and she didn't have to continue working. And she went to the doctor that very same day. Yes, she talked about a knee, because she had a knee injury that was separate from the RSD. But she also, Dr. Pinopio testified, that there was some signs of swelling and redness, and that that certainly could have been a precursor to the flare-up of RSD. For those reasons, we believe that the court should affirm the decision that has been handed down by the commission and should find that the petitioner's condition of ill-being was aggravated by the work accident and that a causal relationship exists. The pneumonia, the cellulitis, and the shingles, are not related? I don't, with regard to the pneumonia, I don't believe there's any testimony that that was related. With regard to the, I'm sorry, what was the second? Cellulitis. With regard to the cellulitis, I don't believe that there's any good testimony with regard to that. Dr. G. Lee makes a passing comment that the cellulitis, or that the RSD might have made her more susceptible to that, but I don't think that the petitioner can hang their head on it. It's too flimsy of an opinion with regard to that. Shingles. The shingles is clearly something different, and I don't think that there's any medical opinion that connects the two. Which brings us, I suppose, to the medical. We agree with Respondent that the medical is not very clearly laid out, and it would be helpful for it to be more clearly delineated. I think that the parties can probably do the majority of that figuring out based upon what has been stated so far and based upon a finding that those conditions, as discussed, are not related, and therefore those medical bills would not be related. With regard to the credit, I do want to make the distinction that any credit that's given for any payments made for bills that ultimately are not chargeable to this claim, are not compensable, should not be credited against payment for the bills that are compensable. If they happen to pay, for example, some bills for Dr. Doherty, who was the infectious disease doctor, and those are found to be non-compensable bills, I'm sorry, they paid for those. They don't get to not pay another bill that they are obligated to pay because they paid something they weren't obligated to pay. We would ask that the Court affirm, and for any clarification of the medical bills, remand back to the Commission. Thank you, Counsel. Counsel, you may reply. Counsel, I just have a few quick comments because I think most of this is actually addressed in my brief. With respect to Counsel's contention that Dr. Pinopio had an independent recollection of this individual, I acknowledged during my initial conversation with you that Dr. Pinopio had a personal relationship with this woman and her family. She's her family physician, and I don't disagree with the fact that she recalled some things with respect to this individual. What she specifically stated during her evidence deposition that she did not recall were specific clinical findings. She was relying upon her notes to do that. So when she attempted to testify to things that were not in her notes, that was not her independent recollection. That was her attempting to assist her patient with respect to her litigation, and I would ask that this Court see that for what it is. With respect to what Counsel said, that the claimant had been out for a period of 30 months by the time this case was tried, firstly, whether a doctor takes somebody off of work I think is completely within that doctor's spectrum, but I don't know that that adds or alleviates their burden of proof with respect to this particular syndrome of complex regional pain. Well, was she taken off from work because the doctor just thought it was better for her, or because she couldn't walk, she couldn't do some of the things she needed to do for her employment? Well, I think she was initially taken off of work due to the knee strain that Dr. Pinocchio believed that she had, and I think that was reasonable. She subsequently developed a number of other conditions which Counsel has conceded are not related, including cellulitis, shingles, pneumonia, all of which continued. She was hospitalized for that cellulitis on two separate occasions for weeks, all of which continued to persist with respect to her off-work status as well as her need for ongoing medical attention. So the fact that she was simply off of work for 30 months, I don't think you can look at that in a vacuum. I think you have to look at what the transaction was between the date of the injury through that entire time frame to determine whether or not you give any credence to the fact that she was off work as far as a chain of events argument. And I don't think that Counsel's chain of event argument changes the fact that there's no diagnosis of complex regional pain syndrome in that first six months of time that she's off, nor are there any clinical findings consistent with it. And as far as Dr. Dick, he indicated that Dr. Dick felt he had enough information to render an opinion. I don't think that's what Gross says. I don't think Gross says that the doctor gets to decide whether or not he's credible. I think that's for the court to determine, and that's what I'm asking you to do here. Thank you. Thank you, Counsel. This matter will be taken under advisement. This position will issue. The court will stand at brief recess for panel discussion.